Carolina **REYES**, Jesus Pedroza, Rene Paredes, Tony Lopez, and Maria Santillanes, et al.

v.

**GREATER TEXAS FINISHING CORP.**
and Sun Apparel, Inc.

No. EP–97–CA–465–DB.

United States District Court,
W.D. Texas,
El Paso Division.

June 29, 1998.

Viviana Patiño, El Paso, TX, for Plaintiffs.

Michael D. McQueen, Shawn Oller, Kemp, Smith, Duncan & Hammond, P.C., El Paso, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendants' Motion for Summary Judgment, filed on March 20, 1998, in the above-captioned cause. Plaintiffs filed their Response to Defendants' Motion for Summary Judgment on April 13. Thereafter, Defendants filed their Reply and Motion to Strike Plaintiffs' Summary Judgment Evidence. Plaintiffs filed their Response to Defendants' Motion to Strike on May 15. After due consideration of the Motions and Responses thereto, the Court is of the opinion that the matters be resolved as set forth below.

### Procedural History

This class action lawsuit was filed by the above-named Plaintiffs to redress alleged violations of the Worker Adjustment and Retraining Notification Act ("WARN"), Title 29 U.S.C. §§ 2101–2109, and for breach of contract on the basis of their termination from employment with Greater Texas Finishing Corporation ("Greater Texas") and Sun Apparel, Inc. ("Sun Apparel") on August 29, 1997. The Court certified the class on February 17, 1998. After proper notification by publication, the Court has determined that the class members total in excess of 200 individuals.[1]

### Facts

Greater Texas is a laundry and garment finishing business located in El Paso, Texas. Sun Apparel is a garment manufacturer also

---

**1.** By Order of the Court dated May 13, 1998, Plaintiffs were requested to submit a final list of those members in the class action who would be bound by future decisions of the Court in this case. Plaintiffs, however, failed to properly comply with the Order. Plaintiffs submitted numerous lists, some of which contain duplicate names and none of the lists are entirely complete. The Court thus finds that the class consists of those individuals who suffered an employment loss at any time from July 29 through September 28, 1997.

located in El Paso. During 1997, Sun Apparel and Greater Texas were distinct corporate entities. Specifically, Sun Apparel was a Texas corporation with its principal place of business at 11201 Armour Drive in El Paso. Greater Texas was a Texas corporation with its principal place of business at 1430 Vanderbilt Drive in El Paso.

For reasons not ascertainable from the record, Greater Texas engaged in a number of terminations and layoffs during the summer and early fall of 1997. At the time of the layoffs, neither of the Defendants was a subsidiary of the other. Although there was an overlap in the shareholders of the two corporations, neither corporation owned an interest in the other at that time. Sun Apparel and Greater Texas each had separate employer identification numbers for federal tax purposes, separate workers' compensation policies, and each maintained separate payroll accounts and filed separate franchise tax returns.

Greater Texas occupies, and did occupy at the time of the layoffs, two buildings on Vanderbilt Drive in El Paso. The laundry and finishing facility is at 1430 Vanderbilt; the warehouse is across the street at 1450 Vanderbilt. Both buildings are part of Greater Texas' integrated operations. Greater Texas receives many of the garments it finishes at the warehouse at 1450 Vanderbilt. These garments are then transferred across the street to the building at 1430 Vanderbilt where they are laundered and finished. When completed, most of the garments are stored and later shipped from the warehouse. Filemon Maldonado, Vice-President of Greater Texas, is responsible for overall management and day-to-day operations in both buildings.

On June 29, 1997, Greater Texas employed a total of 823 employees at their facilities on Vanderbilt Drive. Two hundred fifteen employees were laid off on August 29, 1997, with an additional sixty-seven layoffs and terminations occurring between July 29 and September 28, 1997. Before and after the layoffs, Greater Texas continued regular operations at its facilities and did not permanently or temporarily shutdown its operations, or any specific operating unit.

### Standard on Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure authorizes a motion for summary judgment so that actions which fail to present any genuine issue of material fact may be promptly disposed of before proceeding to trial. The standard for granting summary judgment, pursuant to Rule 56(c) and the laws of the United States, requires that there be no genuine issue of material fact and that the moving party be entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). Rule 56(e) specifically requires that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegation or denial of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.

FED.R.CIV.P. 56(e).

When making a determination on summary judgment disposition, factual questions and inferences are viewed in the light most favorable to the nonmovant. *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir.1994). In other words, the Court examines the pleadings, affidavits, and other evidence introduced in the motion, resolving any doubts in favor of the nonmovant, and determines whether a triable issue of fact exists. *Aulds v. Foster,* 484 F.2d 945, 946 (5th Cir. 1973).

### Discussion

As a preliminary matter, the Court will address Defendants' Motion to Strike Plaintiffs' Summary Judgment Evidence. As part of their Response to Defendants' Motion for Summary Judgment, Plaintiffs included the affidavits of Jesus Pedroza, Rene R. Paredes, Carolina Reyes, and Francisco Reyes. Defendants assert that certain portions of these

affidavits should be stricken because such portions are not competent summary judgment evidence. The Court agrees with Defendants.

■ Pursuant to Rule 56, an affidavit opposing a motion for summary judgment must be sworn, show that the affiant is competent to testify, be based on the affiant's personal knowledge, and state evidentiary facts. FED. R.CIV.P. 56(e). The contents of summary judgment affidavits cannot be conclusory or based on mere information and belief; the facts must be specific and otherwise admissible as evidence. *Richardson v. Oldham,* 12 F.3d 1373, 1378–79 (5th Cir.1994); *Salas v. Carpenter,* 980 F.2d 299, 304–05 (5th Cir. 1992).

Having examined the contents of Plaintiffs' affidavits, the Court finds that the portions of the affidavits identified by Defendants in their Motion to Strike as conclusory, not based on personal knowledge, or unspecific, should be stricken.[2] Furthermore, the Court finds that while there are other portions of Plaintiffs' affidavits not specifically identified by Defendants which fail to meet the requisites of Rule 56(e), it is unnecessary to strike such portions of the affidavits because their contents are inconsequential to the final disposition of this cause.

Thus, having determined what may be properly considered as summary judgment evidence, the Court now turns to the substantive issues in this case.

### Sun Apparel as Employer

In general, the WARN Act requires that employers of more than 100 persons provide at least 60 days written notice to each representative of the affected employees before an employment site closing or mass layoff. 29 U.S.C. § 2102(a)(1). Employers who fail to provide the requisite notice are liable for back pay, lost benefits, civil penalties, and attorneys fees. 29 U.S.C. § 2104.

■ It is undisputed that Greater Texas was Plaintiffs' "employer" for purposes of the WARN Act during the time in question. Plaintiffs argue, however, that Sun Apparel also was their employer and that, as Plaintiffs' employers, both Greater Texas and Sun Apparel failed to provide timely notice under WARN and breached their employment contracts. In advancing their argument, Plaintiffs urge the Court to employ an "economic reality" test to determine whether Sun Apparel was Plaintiffs' employer. Resorting to the legislative history behind WARN and its regulations, Defendants contend that Sun Apparel was not Plaintiffs' employer as that term is applied under the Act.

WARN simply defines an "employer" as a "business enterprise" which employs 100 or more employees, excluding part-time employees. 29 U.S.C. § 2101(a)(1)(A). A congressional report on WARN legislation ("Report") lends further explanation to the term "employer" as follows:

> The Conference Agreement retains the Senate Amendment language that the term "employer" means a business enterprise. The conferees intend that a "business enterprise" be deemed synonymous with the term company, firm or business, and that it consists of one or more sites of

---

**2.** The following portions of Plaintiffs' affidavits are stricken by the Court:

**Affidavit of Carolina Reyes:**
¶ 2—all statements except the dates of her employment and termination;
¶ 3—the statement, "I should be paid these last two hours.";
¶ 4—the statement, "I estimate that the reduction in force was approximately a third of the total number of workers at the laundry/finishing facility."

**Affidavit of Francisco Reyes:**
¶ 3—all statements after "On August 29, 1997, when I was terminated from my employment at 1430 Vanderbilt . . .";

**Affidavits of Jesus Pedroza and Rene R. Paredes —**

¶ 2—the statements, "all personnel matters and pay issues were resolved by Sun Apparel, Inc. . . . Any time an employee had a personnel issue we would go to the offices of Sun Apparel, Inc.";
¶ 5—the statements, "The operations at the warehouse and the laundry/finishing facility were two distinct operations.";
¶ 5, page 2—the statement, "I estimate that the reduction in force was approximately a third of the total number of workers at the laundry/finishing."

**Affidavit of Rene R. Paredes only:**
¶ 4—the statement, "As I understand it, his job was also to decide what price was going to be paid to each operation."

employment under common ownership or control. For example, General Motors has dozens of automobile plants throughout the country. Each plant would be considered a site of employment, but as provided in the Bill, there is only one "employer"— General Motors.

H.R. Conf. Rep. No. 100–576, at 1046 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2078, 2079.

Department of Labor ("DOL") regulations also explain the definition of "employer" under WARN:

Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making the determination include: (i) common ownership; (ii) common directors and/or officers; (iii) de facto exercise of control; (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2) (1998).

To begin, the summary judgment evidence unequivocally establishes that Sun Apparel and Greater Texas were separate corporations; neither corporation was a subsidiary of the other and neither corporation owned an interest in the other during the time in question. Although it appears that the two corporations had common shareholders, there is nothing in the summary judgment record which would lead the Court to conclude that a parent/subsidiary or independent contractor relationship existed between the Defendants. Consequently, Sun Apparel cannot be deemed an "employer" as specified in the DOL regulations.

Furthermore, the Court finds that Sun Apparel did not possess an interest ownership in Greater Texas, or exercise the requisite control over Greater Texas facilities, to qualify as an "employer" as characterized by the Report. First, as mentioned above, there is no evidence of ownership by Sun Apparel in Greater Texas, or vice versa. Second, the summary judgment evidence establishes that Sun Apparel did not exert "control" over Greater Texas facilities.

With regard to the "control" criterion, Plaintiffs direct the Court to personnel matters that were regulated by Sun Apparel. The competent summary judgment evidence reveals that employees of Greater Texas went to the offices of Sun Apparel for purposes of making complaints about vacation pay and receiving employee badges, employment letters, and final pay checks. In addition, Sun Apparel delivered regular paychecks to Plaintiffs. Aside from these few personnel matters, however, Sun Apparel engaged in no other employee activities with regard to Greater Texas operations. To the contrary, the summary judgment record shows that the Defendant corporations acted independently of each other. For example, Greater Texas and Sun Apparel each had their own employer identification numbers for federal tax purposes, separate employer identification numbers with the Texas Workforce Commission, and separate workers' compensation policies. Additionally, each corporation maintained separate payroll accounts and each filed separate franchise tax returns. Finally, different individuals conducted the daily operations of each company and handled separately the hiring and firing of employees.

Based on the foregoing, the Court concludes that Sun Apparel was not an "employer" of Plaintiffs as that term is defined under federal regulations and the legislative history of the WARN Act. Consequently, Sun Apparel cannot be held liable for allegedly failing to timely notify Plaintiffs under WARN.

### Plant Closing

■ Next, Greater Texas asserts it was not required to give the requisite notice under the Act because a "plant closing" did not occur during the time in question. Specifically, Greater Texas contends that neither a permanent nor temporary "shutdown" occurred at its facilities which would have caused an employment loss sufficient to trigger the notice requirement under WARN. Plaintiffs aver that a plant closing did occur because there was a temporary shutdown at Greater Texas where some operating units were closed.

Under the WARN Act, the term "plant closing" means "the permanent or temporary shutdown of a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2). The DOL regulations further explain that "[a]n employment action that results in the effective cessation of production of the work performed by a unit, even if a few employees remain, is a shutdown." 20 C.F.R. § 639.3(b) (1998).

The uncontroverted summary judgment evidence reveals that both before and after the layoffs and terminations that occurred between July 29 and September 28, 1997, Greater Texas continued its regular operations and did not permanently or temporarily shutdown its operations. Additionally, there is no evidence which would indicate that the layoffs and terminations that occurred during the relevant time period resulted in the effective cessation of production performed by any unit at Greater Texas. Plaintiffs allegations concerning a temporary shutdown occurring at Greater Texas on August 29, 1997, which are unsupported by competent summary judgment evidence, are insufficient to raise a fact question with regard to this issue. Thus, the Court finds that Greater Texas did not suffer a plant closing at any point in time from July through September 1997.

### Mass Layoff

Alternatively, Plaintiffs contend that if Greater Texas did not permanently or temporarily shutdown its operations, the terminations and layoffs which occurred from July through September 1997 collectively amount to a "mass layoff" as that term is defined in WARN. Greater Texas maintains that a "mass layoff" did not occur because the number of employees laid off or terminated during the relevant time period does not meet the standard under the Act.

A "mass layoff" is a reduction in force which is not the result of a plant closing, and results in an employment loss at a single site of employment during any 30–day period which involves one-third of the employees at that site and at least fifty employees, or

alternatively, at least 500 employees. 29 U.S.C. § 2101(a)(3). An "employment loss" is defined under DOL regulations as:

> (i) an employment termination other than a discharge for cause, voluntary departure, or retirement, (ii) a layoff exceeding 6 months, or (iii) a reduction in hours of work of individual employees of more than 50% during each month of any 6–month period.

20 C.F.R. § 639.3(f)(1).

### Single Site of Employment

■ Prior to calculating the number of employees that suffered an employment loss, the Court must first determine whether Greater Texas' facilities at 1430 and 1450 Vanderbilt Drive constitute a "single site of employment" for purposes of WARN calculations. In this regard, Plaintiffs allege, without supporting argument or evidence, that Greater Texas' two buildings on Vanderbilt Drive should be considered separate sites of employment. As well, Plaintiffs' appear to argue that WARN calculations should be conducted only with regard to the number of individuals employed at the 1430 Vanderbilt site. The Court finds Plaintiffs' arguments erroneous.

While WARN does not specifically define what constitutes a single site of employment, the DOL regulations do provide profitable insight. The regulations read in relevant part as follows:

> (1) A single site of employment can refer to either a single location or a group of contiguous locations. Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.

> \*   \*   \*   \*   \*   \*

> (5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment.

20 C.F.R. § 639.3(i)(1) & (5).

Based upon the explanations contained in the regulations noted above, it is clear that

Greater Texas' facilities may be considered a single site of employment despite the fact that the buildings are across the street from one another. Moreover, the uncontested summary judgment evidence shows that the contiguous buildings are owned by the same employer, have the same management, work the same products, and frequently share employees. Accordingly, the Court finds that Greater Texas' facilities at 1430 and 1450 Vanderbilt Drive constitute a single site of employment for purposes of the WARN Act.

### WARN Calculations

■ Having found that Greater Texas' facilities are a single site of employment, the Court must now determine whether a mass layoff occurred during the period in question. As previously noted, an employer must provide notice to affected employees at least 60 calendar days prior to any planned plant closing or mass layoff. 29 U.S.C. § 2101(a). According to DOL regulations, in order for an employer to decide whether issuing notice is required the employer should—

(i) Look ahead 30 days and behind 30 days to determine whether employment actions both taken and planned will, in the aggregate for any 30 day period, reach the minimum numbers for a plant closing or a mass layoff and thus trigger the notice requirement; and

(ii) Look ahead 90 days and behind 90 days to determine whether employment actions both taken and planned each of which separately is not of sufficient size to trigger WARN coverage will, in the aggregate for any 90 day period, reach the minimum numbers for a plant closing or a mass layoff and thus trigger the notice requirement.

20 C.F.R. § 639.5(a)(1).

Greater Texas maintains that the requisite time period for calculating employment losses in the instant case is 30 days before and 30 days after August 29, 1997. Plaintiffs contend, however, that since Greater Texas argues that the August 29 terminations were not sufficient in number to reach the minimum numbers for a mass layoff, Greater Texas should have provided information and performed calculations for employment losses occurring 90 days before and 90 days after

August 29. After a thorough reading of the statute, regulations, legislative history and relevant case law, the Court finds that Greater Texas' calculations for 30 days before and after August 29, were proper.

The Court found that the legislative history on this issue provided the most practical explanation. The Report reads in pertinent part, as follows:

The Senate Amendment provides for the determination of a plant closing or mass layoff based on aggregation of smaller employment losses. Under the Amendment, employment losses at a single site for 2 or more groups of employees, *each of which is less than 50 employees*, but which in the aggregate total at least 50 employees, that occur within a 90–day period, will be considered a closing or layoff subject to notification, unless the employer demonstrates the employment losses result from separate and distinct actions and causes and are not an attempt to evade the notice requirements.

H.R. Conf. Rep. No. 100–576, at 1050 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2078, 2083 (emphasis added).

In the instant case, the bulk of the layoffs and terminations, 215 employees, occurred on August 29, 1997. Since this number is greater than the statutory minimum of 50, the requisite statutory period is 30 days, in accordance with 29 U.S.C. § 2101(a)(3).

Next, the point in time at which the number of employees is to be measured is the date the first notice is required to be given, or 60 calendar days prior to any planned mass layoff. 20 C.F.R. § 639.5(a)(2). Greater Texas claims that the notice date is sixty days prior to the August 29 layoffs, or June 29. However, the DOL regulations are clear; when all employees are not terminated on the same date, the date of the first individual termination within the statutory 30 day or 90 day period triggers the 60 day notice requirement. 20 C.F.R. § 639.5(a)(1). Exhibit A to Defendants' Motion for Summary Judgment and Plaintiffs' Notice of Class Members, reveals that at least 11 full time employees were terminated during the 30 days prior to August 29, 1997. According only to

the information contained in Exhibit A, it appears that Esteban Floriano was terminated on July 30, and would therefore be the first person entitled to possible notice under WARN. Consequently, the point in time at which the number of employees is to be measured in the instant case is not 60 days prior to August 29, but sixty days prior to July 30, or May 31, 1997.

Greater Texas' calculations in its Motion and the corresponding summary judgment evidence only pertain to the notice date of June 29, 1997. Additionally, although Plaintiffs advanced other arguments with regard to the number of employees suffering employment losses, they wholly failed to raise an issue with regard to the propriety of the notice date. Since the summary judgment evidence proffered by Greater Texas fails to include the requisite numbers for May 31, 1997, a genuine issue of material fact exists with regard to an essential element of Plaintiffs' claim and the Court is precluded from issuing summary judgment. Further, while Greater Texas' June 29 calculations may establish that a mass layoff did not occur, the Court declines to render an advisory opinion based on the incorrect data.

However, the Court notes that "[s]ummary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555. Thus, the Court finds that it would best serve the interests of all parties to permit Greater Texas to submit a second summary judgment motion to enable the Court to determine whether Plaintiffs' have a viable cause of action under WARN.

### Vacation Pay

Lastly, Plaintiff Carolina Reyes ("Reyes") asserts a cause of action for breach of contract. Reyes alleges that Greater Texas failed to pay her two hours of vacation pay as guaranteed to her in her employment contract. Greater Texas argues that summary judgment is proper with regard to this claim since Reyes was compensated for her vacation pay in accordance with Greater Texas policy. The Court concurs.

Pursuant to company policy, Greater Texas employees do not accrue vacation pay for any period of time that an employee is laid off. If an employee is laid off and is not recalled to work before December of the calendar year, then the employee is paid his or her accrued but unused vacation time in December of that calendar year. Reyes was laid off on August 29, 1997, and would have been entitled to 80 hours of accrued vacation pay in accordance with Greater Texas' policy and procedure. However the uncontroverted competent summary judgment evidence shows that, due to her layoff, two hours of vacation pay were deducted from Reyes' total accrued vacation pay. Thus, summary dismissal is appropriate on Reyes' cause of action for breach of contract.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Strike Plaintiffs' Summary Judgment Evidence is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** with respect to Sun Apparel.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** on the issue of plant closing.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** on Plaintiff Reyes' breach of contract claim.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** on the issue of mass layoff. Should Greater Texas choose to submit a second dispositive motion, only with regard to the issue of mass layoff, the deadline for filing such motion is on or before **July 10, 1998.** Plaintiffs' response shall be due on or before **July, 21, 1998.**

**IT IS FINALLY ORDERED** that trial of the above-captioned cause shall be continued to **September 28, 1998.**